UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>  c/o United States Attorney<br>  for the District of Columbia<br>  555 4th Street, N.W.<br>  Washington, DC 20530<br><br>        Plaintiff,<br><br>        v.<br><br>ALLIED PROTECTION SERVICES, INC.<br>  5757 Century Blvd., Suite 700<br>  Los Angeles, CA 90045<br><br>        Defendant | Civ. Action No. |

## COMPLAINT

The United States brings this action against defendant Allied Protection Services, pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq*.

### PARTIES

1. Plaintiff is the United States of America, on behalf of the United States Marshals Service ("U.S. Marshals Service"), a law enforcement agency of the United States responsible for the security and transportation of prisoners in federal custody.

2. Defendant Allied Protection Services, Inc. ("Allied") is a California corporation with a mailing address of 5757 Century Blvd., Suite 700, Los Angeles, CA 90045. Allied entered into contracts with the U.S. Marshals Service to provide armed security personnel for the security and transportation of prisoners in federal custody.

## JURISDICTION AND VENUE

3. This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33, and the common law.

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1345.

5. This Court may exercise personal jurisdiction over defendant pursuant to 31 U.S.C. § 3732(a), because Defendant entered into the contract in the District of Columbia and transacts business in the District of Columbia.

6. Venue is proper in this District under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c) because Defendant transacts business in this District.

## STATUTORY FRAMEWORK OF THE FCA

7. The False Claims Act, originally enacted in 1863 during the Civil War was substantially amended by the False Claims Amendments Act of 1986, signed into law on October 17, 1986; and by the Fraud Enforcement and Recovery Act of 2009, signed into law on May 20, 2009. Congress' intent was to enhance the Government's ability to recover losses sustained as a result of fraud against the United States and to provide a private cause of action for the protection of employees and others who act in furtherance of the purposes of the Act. Congress acted after finding that fraud in federal programs and procurement is pervasive and that the Act, which Congress characterized as the primary tool for combating fraud in government contracting, was in need of modernization.

8. The FCA provides for the award of treble damages and civil penalties for the knowing submission or knowingly causing the submission of a false or fraudulent claim for payment to the United States Government, or knowingly using a false record or statement

material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A)–(B).  Specifically the FCA provided that any person who

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000 . . ., plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. §§ 3729(a)(1).[1]

9. Under the FCA, the United States does not need to demonstrate proof of specific intent to defraud.  Rather the term "knowing" and "knowingly" are defined under the FCA to mean that a person has actual knowledge of the truth or falsity of the information; acts in deliberate ignorance of the truth or falsity of the information; or acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b)(1).

## FACTS

### Allied's Contracts with the U.S. Marshals Service

10. As set forth below, Allied entered into service contracts (collectively referred to as "U.S. Marshal Contracts") with the U.S. Marshals Service to provide security, patrol and prisoner transportation services for the U.S. Marshals Service.  Each contract contained training, certification, and equipment requirements and conditions that were essential to security and

---

[1] Pursuant to the Federal Civil Monetary Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), 64 Fed. Reg. 47099, 47103 (1999), and the Bipartisan Budget Act of 2015, 85 Fed. Reg. 37004-37005, the FCA civil penalties were adjusted to a range of $5,500 to $11,000 per false claim for violations occurring from September 29, 1999, to November 2, 2015, and $11,665 to $23,331 per false claim for violations occurring after November 2, 2015.

safety, and were material to the U.S. Marshals Service decision to pay and maintain each U.S. Marshal Contract with Allied.

11. On October 17, 2012, the U.S. Marshals Service executed contract DJMS-13-D-0185 with Allied Protection Services, Inc. ("Allied") for the provision of security, patrol and prisoner transportation services for the Western District of Washington (the "Washington Contract"). The contract's completion date was set for October 16, 2017.

12. On January 27, 2014, the U.S. Marshals Service executed contract DJM-14-A35-V-0016 with Allied Protection Services, Inc., for the provision of security and patrol services for the Southern District of Florida (the "S.D. Florida Contract"). The contract's completion date was set for September 30, 2018.

13. On January 29, 2014, the U.S. Marshals Service executed contract DJM-14-A35-V-0017 with Allied Protection Services, Inc. for the provision of security and patrol services, including prisoner transport, for the Eastern District of Virginia ("E.D. Virginia Contract").

14. On October 1, 2014, the U.S. Marshals Service renewed the E.D. Virginia Contract with Allied Protection Services, Inc., for the provision of security, patrol, and prisoner transportation services in the Eastern District of Virginia. This contract's completion date was set for September 30, 2015.

15. The U.S. Marshal Contracts mentioned in paragraphs 11–14 above require that employees of Allied meet certain minimum eligibility, training, and certification requirements, and further that all Allied employees be equipped with acceptable security and custody equipment. Under these contracts, Allied is responsible for the training, certification, and orientation of all its employees, and for ensuring that all employees comply with the on-going requirements of the U.S. Marshal Contracts.

16. The U.S. Marshal Contracts mentioned in paragraphs 11-14 also required that Allied maintain all personnel records for the duration of the contracts and make all personnel records available to the U.S. Marshals Service upon request.

## Employment Requirements and Training

17. Prior to assignment to a site governed by a contract with a U.S. Marshals Service, Allied employees must complete or provide the following forms or items:

   a. USM-234 Form (Personal Qualifications Statement)

   b. Form I-9, Employment Eligibility Verification

   c. SF-85P (Questionnaire for Non-sensitive Public Trust Positions)

   d. A military discharge certificate, if applicable.

   e. Medical Certification (showing employee is fit for duty) or a completed physical examination.

   f. Two FD-258 forms (Applicant Fingerprint Cards)

   g. Two forms of identification; a USM-394 Personal Identity Verification Form may also be utilized by the employee.

18. To qualify for a position as an Armed Detention Officer ("security officer"), the U.S. Marshal Contracts required the following qualifications:

   a. The employee to have a minimum of three years of work as full time security, law enforcement, corrections officer, or military police with experience monitoring detainees and dealing with security matters related to prisoner handling and detention of prisoners on a regular basis.

   b. The employee must be at least twenty-one years old and have a current driver's license.

   c. The employee must be a United States citizen or a legal alien.

   d. The employee must not have a previous misdemeanor or felony involving the illegal use of weapons.

  e. The employee must pass a criminal background investigation.

  f. The employee must go through a social security number trace and verification process.

  g. The employee must provide verification of employment for the previous five years.

  h. The employee must provide verification of residency for the previous three years.

  i. The employee must have a satisfactory credit check, meaning that the employee has no serious delinquent debts or unresolved liens, collections accounts, or court ordered judgments.

  j. The employee must pass a multi-state instant criminal and sex offender registry check.

  k. Allied provide all of its security officers with a weapons holster, specific to the officer's weapon, that covers the trigger guard and secures the weapon with a minimum of one retention device in the form of a strap or thumb-break.

19. These documentation and qualification requirements are material to the U.S. Marshal Contracts, and Allied knew that the U.S. Marshals Service would have terminated its use of Allied personnel and denied payment to Allied if these requirements were not met.

20. The U.S. Marshal Contract required that all Allied security officers complete the following training requirements.

  a. Forty hours of specified security officer training before beginning employment as a security officer;

  b. Nine-hour mandatory attendance supervisor training for all Allied project managers and designated guard supervisors assigned to duties under the U.S. Marshal Contracts;

  c. Twenty hours of firearms training ("weapons proficiency course"), pursuant to U.S. Marshal Directive 2.3: Handgun Qualifications. The firearms training consists of twelve hours of classroom instruction and eight hours of range instruction and qualification.

      d.      The use of double action .38 caliber or larger revolvers with a minimum capacity of six rounds and semi-automatic pistols, 9mm by 19mm or larger, with a minimum capacity of six rounds. To pass this weapons proficiency course, Allied security officers had to annually obtain a score of 210 out of a possible 300 points for primary duty handguns as per USMS Directive 2.3: Handgun Qualifications.

      e.      An up-to-date permit to carry a firearm and a weapons proficiency retest within sixty days prior to the one-year anniversary of the previous test date.

21.      The completion of each above-required training element was to be recorded and maintained in the employee file of each Allied security officer/employee.

22.      Allied was aware that most of Allied security officers'/employees' files lacked any proof that the employees received the above-required training.

23.      These training requirements are material to the U.S. Marshal Contracts, and Allied knew or should have known that the U.S. Marshals Service would have terminated its use of Allied personnel and denied payment to Allied if these requirements were not met.

### Weapons Proficiency Certification Requirement

24.      The U.S. Marshal Contracts required that Allied security officers possess a weapons proficiency certification / recertification.

25.      The U.S. Marshals Contracts required any security officer who failed to pass the weapons proficiency course is ineligible to serve as an armed security guard.

26.      The U.S. Marshals Contracts required that all weapons proficiency certificates are to be recorded and maintained in the employee file of each Allied security officer/employee.

27.      Allied was aware that most of its security officers/employees lacked the required weapons proficiency training and that the personnel file of those employees lacked a weapons proficiency certificate.

28. These certification requirements are material to the U.S. Marshal Contracts, and Allied knew or should have known that the U.S. Marshals Service would have terminated its use of Allied personnel and denied payment to Allied if this requirements were not met.

### Equipment Requirements

29. The U.S. Marshal Contracts required that Allied provide its security employees with specific equipment to ensure the security and safety of persons within each security employee's custody.

30. The U.S. Marshal Contracts required that Allied provide all of its security officers with a weapons holster, specific to the officer's weapon, that covers the trigger guard and secures the weapon with a minimum of one retention device in the form of a strap or thumb-break.

31. The U.S. Marshal Contracts also required that Allied shall be responsible for purchasing restraining devices to be placed on all Federal prisoners while in Allied's custody.

32. The U.S. Marshal Contracts further require that leg irons will be used on prisoners confined to a hospital that does not have a jail ward, specialty restraints (i.e., tether & control straps, thumb cuffs, flex cuffs, restraint chairs, etc.) will not be used unless specifically authorized by the U.S. Marshals Service, and that handcuffs will be applied to a prisoner prior to removing leg irons if the leg irons are to be removed for a medical or other compelling purpose.

33. Allied failed to provide its employees with the required equipment and/or failed to ensure that its security employees possess and use the required equipment to ensure the safety and security of the person in custody or the community.

34. These equipment requirements are material to the U.S. Marshal Contracts, and Allied knew or should have known that failure to provide the equipment could pose a threat to the health and safety of a person in custody, or would pose a threat to the community from the

escape of a person in custody. The U.S. Marshals Service would have terminated its use of Allied personnel and denied payment to Allied if these requirements were not met.

## Fairfax, Virginia Incident

35. As demonstrated below, the failure to comply with the above requirements resulted in the escape of a dangerous prisoner in the custody of Allied security personnel, and placed members of the community and officers of law enforcement agencies in grave danger.

36. On March 31, 2015, during a prisoner transport to Fairfax INOVA Hospital, a dangerous and violent prisoner was able to overtake Allied security officers who were using non-conforming security equipment, failed to keep the prisoner under supervision, lacked the required equipment intended to prevent or impede a prisoner's ability to take an employee's firearm, and lacked the required training and qualifications to be assigned as security personnel under the U.S. Marshals Contract.

37. During the incident, the prisoner took a firearm from one Allied security officer, took the guard as a hostage, and escaped from custody.

38. After a violent pursuit by the Fairfax County Police, the Virginia State Police, and the District of Columbia Metropolitan Police Department, the prisoner was apprehended. This incident is referred to hereafter as the "prisoner escape incident."

39. In a follow-up investigation of the prisoner escape incident, the U.S. Marshals Service determined that the security employees assigned by Allied to guard the prisoner were not qualified, trained, or equipped to perform the services as required under the U.S. Marshal Contracts.

40. The United States conducted further investigations into all of Allied's contracts with the U.S. Marshals Service, which comprised of contracts for security personnel in Virginia, Florida, and Washington State.

41. As part of the investigation, the United States subpoenaed and obtained the personnel files of all Allied security personnel.

## Allied's Violations of the E.D. Virginia Contract

42. The United States investigated Allied's performance under the E.D. Virginia Contract and determined that all security employees used by Allied to fulfill its obligations under the contract lacked the qualifications or training required by the contract.

43. Allied used thirty-four employees to fulfill its obligations under the E.D. Virginia Contract.

44. Thirty-three employees failed to complete the required weapons proficiency course and failed to retest their weapons proficiency on an annual basis.

45. A review of Allied records revealed that Allied failed to recertify that its employees tested/retested and passed the weapons proficiency course, except for a single employee who had not taken the weapons proficiency course before Allied assigned the employee to fulfill the E.D. Virginia Contract.

46. The review further found that Allied failed to conduct background checks on all of the employees that it used to fulfill the E.D. Virginia Contract, and most of the employees failed to possess permits authorizing them to carry firearms.

47. Finally, the review found that Allied failed to provide its security officers with the requisite security equipment for restraining and securing prisoners in their custody.

48. Allied submitted or caused to be submitted invoices to the U.S. Marshals for payments under the E.D. Virginia Contract between 2012 and 2015 that expressly and/or impliedly certified that each employee was qualified for the position billed or invoiced, despite Allied's knowledge that its employees were not qualified and that its employees were not provided security equipment thereby rendering them incapable of providing the services invoiced.

### Allied's Violations of the S.D. Florida Contract

49. The United States conducted an investigation of Allied's performance under the S.D. Florida Contract and determined that all employees that Allied used to fulfil its contractual obligations lacked the qualifications and training material to the contract and to the security of the Federal prison system.

50. Allied used twelve employees to fulfill its obligations under the S.D. Florida Contract.

51. All twelve employees that Allied used for the S.D. Florida Contract lacked many or all of the qualifications required under the S.D. Florida Contract. All twelve employees failed to complete the required weapons proficiency course and most did not meet any of the contractual qualifications required for weapons training.

52. Allied failed to recertify annually to the U.S. Marshal or contract officer that its employees tested/retested and passed the weapons proficiency course.

53. Allied further failed to conduct background checks on all of the employees that it used to fulfill the S.D. Florida Contract and all employees failed to possess permits authorizing them to carry firearms.

54. Allied submitted or caused to be submitted invoices to the U.S. Marshals for

payments under the SD. Florida Contract between 2012 and 2017, despite Allied's knowledge that its employees were not qualified and were in violation of the S.D. Florida Contract.

### Allied's Violations of the Washington Contract

55. The United States conducted an investigation of Allied's performance under the Washington Contract and determined that all employees used by Allied to fulfill its contractual obligations failed to meet the qualifications and training material to the contract.

56. Allied used thirty-seven employees to fulfill its obligations under the Washington Contract.

57. All thirty-seven employees used by Allied lacked many or all of the qualifications required under the contract. All thirty-seven employees failed to complete the required weapons proficiency course and most did not meet any of the contractual qualifications required for weapons training.

58. Allied failed to recertify annually to the U.S. Marshal's Service or contracting officer that its employees tested/retested and passed the weapons proficiency course.

59. Allied further failed to conduct background checks on twenty-six of the employees that it used to fulfill the Washington Contract and most of all employees failed to possess permits authorizing them to carry firearms.

60. Allied submitted or caused to be submitted invoices to the U.S. Marshals Service for payments under the Washington Contract between 2012 and 2017, despite Allied's knowledge that its employees were not qualified in violation of the Washington Contract.

### DAMAGES

61. Between 2014 and 2015, Allied submitted twenty invoices to the U.S. Marshals Service, and the U.S. Marshals Service paid Allied $212,150 under the E.D. Virginia Contract.

Allied submitted or caused to be submitted to the U.S. Marshals Service these invoices, despite Allied's knowledge that its employees lacked the qualifications required by the E.D. Virginia Contract.

62. Between 2014 and 2017, Allied submitted twenty-seven (27) invoices to the U.S. Marshals Service, and the U.S. Marshals Service paid Allied $641,149 under the S.D. Florida Contract. Allied submitted or caused to be submitted to the U.S. Marshals Service these invoices, despite Allied's knowledge that its employees lacked the qualifications required by the S.D. Florida Contract.

63. Between 2012 and 2016, Allied submitted forty-one (41) invoices to the U.S. Marshals Service, and the U.S. Marshals Service paid Allied $459,344, under the Washington Contract. Allied submitted or caused to be submitted to the U.S. Marshals Service these invoices, despite Allied's knowledge that its employees lacked the qualifications required by the Washington Contract.

**FIRST CAUSE OF ACTION**
(False Claims Act: Presentation of False Claims)
(31 U.S.C. § 3729(a)(1)(A))

64. The United States incorporates each allegation in Paragraphs 1 through 62 as if fully set forth herein.

65. Allied knowingly presented or caused to be presented actual or implied false or fraudulent claims for payment or approval to the United States. Specifically, Allied billed the U.S. Marshals Service, and the United States paid for licensed, qualified security personnel, and Allied failed to inform the U.S. Marshals Service that its personnel were not qualified to serve in the positions assigned or invoiced.

66. By virtue of the false or fraudulent claims made by Allied, the United States

13

suffered damages in an amount to be determined at trial and therefore is entitled under the False Claims Act to triple damages. The United States is also entitled to a civil penalty of $10,781 to $21,563 for each violation that occurred on or after November 2, 2015, and $5,500 to $11,000 for each violation that occurred on or before November 1, 2015.

## SECOND CAUSE OF ACTION
(False Claims Act: Making or Using False Record or Statement)
(31 U.S.C. § 3729(a)(1)(B))

67. The United States incorporates each allegation in Paragraphs 1 through 62 as if fully set forth herein.

68. Defendants knowingly (as "knowingly" is defined by 31 U.S.C. § 3729(b)(1)) made, used, or caused to be made or used, false records or statements material to false or fraudulent claims paid or approved by the United States. Specifically, Defendants knowingly made false statements and/or implied certifications to the U.S. Marshals Service that it was providing security services as required by the U.S. Marshals Contracts, and failed to notify or inform the U.S. Marshals Service that its personnel were not qualified to serve in the positions assigned or invoiced.

69. By virtue of the false or fraudulent claims or certifications made by Allied, the United States suffered damages an amount to be determined at trial and therefore is entitled under the False Claims Act to triple damages. The United States is also entitled to a civil penalty of $10,781 to $21,563 for each violation that occurred on or after November 2, 2015, and $5,500 to $11,000 for each violation that occurred on or before November 1, 2015.

## THIRD CAUSE OF ACTION
(Breach of Contract)

70. The United States incorporates each allegation in Paragraphs 1 through 62 as if fully set forth herein.

71. By reason of the actions described above, Allied breached the U.S. Marshal Contracts by failing to provide security services as required by the U.S. Marshals Contracts.

72. As the result of this breach of contract, the United States has sustained damages.

### FOURTH CAUSE OF ACTION
(Unjust Enrichment)

73. The United States incorporates each allegation in Paragraphs 1 through 62 as if fully set forth herein.

74. Allied obtained payments from the U.S. Marshals by submitting invoices to the U.S. Marshals under contracts that Allied knew it was breaching through its use of unqualified employees. As a result of these payments, Allied has been unjustly enriched at the expense of the United States, under circumstances dictating that in equity and good conscience sums paid to Allied should be returned.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant as follows:

A. On Plaintiff's Counts One and Two, False Claims Act, judgment against the Defendant, for treble its damages and, for the number of civil penalties allowable by law, in an amount as the Court may determine between $5,500 and $21,563 for each violation;

B. On Plaintiff's Count Three, Breach of Contract, for damages together with costs and interest;

C. On Plaintiff's Count Four, Unjust Enrichment, for damages together with costs and interest;

D. For all other and further relief as the Court may deem just and equitable;

E. For pre-judgment interest, post-judgment interest, fees, and costs, as the jury deems appropriate and just.

Respectfully submitted,

MATTHEW GRAVES
United States Attorney

BRIAN HUDAK
Acting Chief, Civil Division

By: /s/ *Darrell C. Valdez*
DARRELL C. VALDEZ, D.C. Bar No. 420232
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
Telephone: 202-252-2507
Darrell.Valdez@usdoj.gov

*Counsel for the United States of America*